# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASA DIMITRI CORP. d/b/a
DIMITRI & CO., a Florida corporation,

                                               Case No.:   15-CV-21038

        Plaintiff,

vs.

TECHNOMARINE S.A.,
a Swiss Corporation,
TECHNOMARINE USA, INC.,
a Florida Corporation,
TECHNOMARINE ASIA LIMITED,
a Hong Kong Corporation, and
INVICTA WATCH COMPANY OF
AMERICA, INC., a Florida Corporation

        Defendants.

_____/

## COMPLAINT FOR DAMAGES, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, CASA DIMITRI CORP. d/b/a DIMITRI & CO. ("Dimitri & Co."), by and through undersigned counsel, hereby sues Defendants, TECHNOMARINE S.A., TECHNOMARINE USA, INC., TECHNOMARINE ASIA LIMITED, and INVICTA WATCH COMPANY OF AMERICA, INC. (collectively, "Defendants"), and state as follows:

1.     This is an action at law and in equity for trademark dilution, injury to business reputation, unfair competition, deceptive trade practices, civil conspiracy, breach of contract, breach of the implied covenant of good faith and fair dealings, and tortious interference with business relationship arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (2004), Florida's Anti-dilution statute, § 495.151, Florida Statutes (2014), and Florida's Unfair and Deceptive Trade Practices Act, § 501.201 *et seq.*

1

2.    Techno, S.A. and Techno Asia ("Technomarine Defendants") are offering for sale and selling high-end luxury Swiss watches and eyewear products which are prominently known in the watch and eye wear industry. Dimitri & Co. is the exclusive licensee of the Technomarine trademarks and distributor of Technomarine products in the U.S., Venezuela, Colombia, Ecuador, Peru, Bolivia, Mexico, Panama, Nicaragua, Costa Rica, Guatemala, Salvador, Bolivia, Belize, and all countries in the Caribbean area.

3.    Invicta Watch Company of America, Inc. ("Invicta") is a direct competitor of Technomarine in the watch and eyewear industry. Upon information and belief, the Invicta Defendants have entered into and/or in the process of completing a sale and purchase of Technomarine's assets including, but not limited to, Technomarine's trademarks. In connection with the sale and purchase transaction, the Technomarine Defendants and the Invicta Defendants have made concerted efforts to dilute the Technomarine trademarks in order to damage Dimitri & Co. and force them out of business.

4.    Defendants' wrongful conduct has damaged Dimitri & Co. and inflicted irreparable harm and as such, Dimitri & Co seeks, *inter alia*, injunctive relief and disgorgement of the Technomarine Defendants' profits from the sale and purchase transaction with the Invicta Defendants and the sale of the infringing products.

**PARTIES**

5.    Plaintiff, Dimitri & Co., is a Florida corporation with its principal place of business at 20161 NE 16th Place, North Miami Beach, Florida 33179.

6.    Defendant, TECHNOMARINE S.A. is a corporation organized and existing under the laws of Switzerland, with an office and place of business at 02 Rue de la Rotisserie, 1204-Geneva, Switzerland.

2

7.      Defendant, TECHNOMARINE USA, INC., is a Florida corporation with its principal place of business at 7600 NW 19th Street, Suite 401, Miami, Florida 33126.

8.      Defendant, TECHNOMARINE ASIA LIMITED, is a corporation organized and existing under the laws of Hong Kong with an office and place of business at Flat B/D/, 10th floor, Gee Hing Industrial Building 16, Cheung Yew Street, Kowloon, Hong Kong.

9.      Defendant, INVICTA WATCH COMPANY OF AMERICA, INC., is a Florida Corporation with its principal place located at 3069 Taft Street, Hollywood, Florida 33021.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over the trademark dilution and unfair competition claims pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. § 1116(a) and 1121, and 28 U.S.C. §§ 1331, 1338, and 1367(a). The Court also supplemental jurisdiction over the state law claims of trademark dilution, civil conspiracy, unfair competition, breach of contract, breach of the implied covenant of good faith and fair dealings, and tortious interference with business relationship pursuant to 28 U.S.C. § 1367 since those claims arise from and are related to the same set of facts as Dimitri & Co.'s Lanham Act Claims.

11.      This Court has *in personam* jurisdiction over the Defendants pursuant to Fla. Stat. 48.193, in that they: (a) are operating, conducting, engaging or carrying on a business, in the State of Florida; (b) have committed tortious acts within the State of Florida; (c) are engaging in substantial and not isolated activity within the State of Florida giving rise to the request herein such that it should have reasonably anticipated and had fair warning of, being haled into Court in the State of Florida.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), as the claims arose in this judicial districts and Defendants are either residents or do business in this judicial district.

## GENERAL ALLEGATIONS

13.     Technomarine S.A. is a Swiss designer, manufacturer, and distributor of watches which pioneered the concept of combining removable and interchangeable translucent covers and watchbands in an array of bright colors with stainless steel diving watches, creating a look that is modern and fun and which watches are unique and functional.

14.     The Technomarine brand was established in 1997 when Technomarine launched its first watch named "Raft." Although the Technomarine watched are typically purchased by divers for their functionality and accurateness, Technomarine also created a fashion niche for its extensive line of watches around the world, coveted by adults and teens alike.

15.     Technomarine S.A. is the owner of various registrations for the word mark "Technomarine," Federal Registration Nos. 4398263, 4000628 as well as their TM logo shown below and variations thereof, Federal Registration Nos. 4394401 and 4000629 (collectively "Technomarine Marks"):



16.     Technomarine watches are sold and have been sold in the most prestigious stores throughout the United States, including Tourneau, Macy's, Bloomingdales, Saks Fifth Avenue, Neiman Marcus, and other high-end independent jewelry stores in the U.S.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

17.     In addition, Technomarine relies heavily on its distributors to establish, fund, manage, and operate a distribution model that consist of point of sale outlets in the U.S. and worldwide.

18.     In 2000, Dimitri & Co. entered into an agreement to become Technomarine's exclusive distributor of all Technomarine products in Venezuela.

19.     At that time, Technomarine was a very young brand that was neither sold nor well known in the Venezuelan market. Dimitri & Co. undertook a substantial investment in establishing a distribution system of Technomarine products in Venezuela.  To that end, Dimitri & Co. worked tirelessly and expended substantial sums of money in identifying potential investors who would be interested in acquiring Technomarine point-of-sale outlets in Venezuela.

20.     Nearly a year later, in 2001, realizing the early success that Dimitri & Co. was achieving in Venezuela market, the Technomarine Defendants granted Dimitri & Co. the distribution rights for Panama, Bolivia, Peru, Ecuador and Colombia. Dimitri & Co. invested substantial amounts of time, energy and money in building a distribution model, promoting and raising consumer awareness of the Technomarine brands in those markets as it had been doing in Venezuela.

21.     In 2003 – 2004, given the parties' three-year successful relationship, Technomarine granted Dimitri & Co. the distributorship rights for Central America (Nicaragua, Honduras, Panama, Costa Rica, Guatemala, El Salvador, and Belize) and Mexico. The Technomarine brand did not have visibility or market share in those markets before Dimitri & Co. became the exclusive distributors for those markets.

22.     Over the past 11 years, Dimitri & Co. served as the exclusive distributor of Technomarine products in Venezuela, Colombia, Ecuador, Bolivia, Peru, Mexico, Panama,

Nicaragua, Costa Rica, Guatemala, El Salvador, Honduras and Belize based on distributorship agreements that were renewed automatically with Defendant Technomarine Asia Limited.

23.     On January 1, 2013, Dimitri & Co. entered into its most recent distributorship agreement with Technomarine Asia Limited for those markets (the "Distributorship Agreement").

24.     Among other things, the Distributorship Agreement (i) appointed Dimitri & Co. as the exclusive distributor for Technomarine in those Latin and Central American markets for the distribution, sale and service of Technomarine products (watches), and (ii) authorized and required Technomarine to develop and maintain a network of authorized independent point-of-sale outlets throughout those markets for the sale and service of Technomarine products to retail customers. Distributorship Agreement at ¶¶1.1 and 5.6. A true and correct copy of the Distributorship Agreement is attached hereto as Exhibit "A."

25.     Dimitri & Co. also realized that there was a niche market for eyewear products and had a vision about developing an eyewear product line that would cement and enhance the Technomarine footprint worldwide.

26.     To that end, in 2004, Technomarine S.A. agreed to allow Dimitri & Co. to develop, manufacture, market, sell, and service a line of eyewear products in Central America and the U.S.

27.     In order to induce Dimitri & Co. into undertaking the substantial investment in development of the eyewear products, Technomarine SA granted Dimitri & Co. an exclusive license of the Technomarine Marks to develop, manufacture, market, advertise, sell and service eyewear products in the U.S., Central America, and Latin America.

28.     Over the past 11 years, Dimitri & Co has served as the exclusive licensee of the Technomarine Marks in connection with the development, manufacturing, marketing, selling and

6

service eyewear products for Technomarine in Latin and Central America and the U.S. based on License Agreements that were renewed automatically with Technomarine SA.

29.     On January 1, 2013, Dimitri & Co. entered into its most recent exclusive License Agreement for Latin and Central America and the U.S. (the "License Agreement").

30.     Among other things, the License Agreement (i) appointed Dimitri & Co. as the exclusive licensee of the Technomarine Marks in connection with the development, manufacturing, marketing, selling, and servicing of eyewear products for Technomarine in Latin and Central America and the U.S. markets and (ii) granted Technomarine ownership interest in the concepts, designs, slogs, colors and tag lines of the eyewear products developed under the License Agreement.  License Agreement at ¶¶1.1, 3.1 and 5.1. A true and correct copy of the License Agreement is attached hereto as Exhibit "B."

31.     Dimitri & Co. invested millions of dollars in establishing, supporting, and servicing the distribution network in those markets including, but not limited to, (i) introducing the Technomarine brand to Latin, Central America, and Mexico, (ii) identifying potential investors who were interested in acquiring point-of-sale outlets in those markets, (iii) assisting the dealers in identifying suitable locations for their outlets, (iv) undertaking financial and non-financial obligations in assisting the dealers in opening their outlets, (v) enhancing Technomarine brand's goodwill, and reputation, (vi) routinely stocking for the benefit of its dealers more Technomarine products than required by the Distributorship Agreement and making them timely available to the dealers who would otherwise be required to stock those items themselves at a significant cost, expense, and inconvenience, (vii) training the dealers' staff to adequately sell and service the Technomarine products, and (vii) providing ongoing support and services for the dealers to

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

maintain the brand reputation and high-quality of the Technomarine products that consumer have come to expect from Technomarine.

32.     Dimitri & Co. had to provide all of those services because Technomarine, as a young brand, did not have the infrastructure to support the distribution network (i.e., a real estate development department or a marketing department) to do so.

33.     Given that watch and eyewear makers typically compete for visibility within a retailer's store (i.e., store front, largest showcase, retailer's sales stuff pushing their products over their competitors), the retailers usually demand significant concessions in return (i.e., larger selection of products, significant discounts on wholesale prices, better credit terms, additional training for the staff).

34.     In order for Dimitri & Co. to compete with other watch and eyewear brands, it developed a "store within the store" concept which required it to develop the Technomarine visual concept, color scheme, and furniture to be used in those outlets. This not only allowed Technomarine to maximize its visibility to the retail consumer, it also distinguished the Technomarine brand from the competition.

35.     Indeed, before Dimitri & Co. was appointed the exclusive distributor for Latin, Central American and Mexico markets, Technomarine had little or no brand-name recognition or good will in Latin, Central America, or Mexico.

36.     Due to Dimitri & Co.'s tireless efforts and dedication to the Technomarine brand and the substantial investment it made in marketing, promoting and selling Technomarine products, Technomarine had approximately 178 point-of-sale outlets in those markets by 2006 – 2007, which in turn generated millions of dollars in sales for the Technomarine Defendants.

37.     In addition to the dealer network, and as a related business that was intended to advertise, market, promote the Technomarine brand and the Technomarine Defendants' business in Latin, Central America, and Mexico, Dimitri & Co. was also permitted under separate distribution agreements to develop, manufacture, market, and sell leather goods, clothing, and accessories bearing the Technomarine Marks.

38.     These licensed products were a significant and material business element that enabled Technomarine dealers in Latin, Central America, and Mexico to advertise their dealership and business locally and to tourists and represented a significant and material form of marketing, advertising, and promotion for the brand and a source of income for the dealers, Dimitri & Co., and the Technomarine Defendants.

39.     Throughout the course of the relationships between Dimitri & Co. and the Technomarine Defendants, Dimitri & Co. has invested millions of dollars and countless hours towards the development of the Technomarine brand and goodwill, the development of the Technomarine dealer network, and the operation of the Technomarine business in Latin, Central America, Mexico, and the U.S.

40.     In 2007, Franck Dubarry, the founder of Technomarine S.A., sold the company to two private equity firms through a leveraged buyout. At the time, Technomarine's business was thriving and it had reached $1 billion in sales.

41.     After the acquisition was complete, Technomarine's sales faltered due to a series of decisions by the new management that proved to be detrimental to Technomarine's business coupled with the management's lack of vision and direction and failure to execute and navigate the very difficult times in the luxury goods business with the slowdown in the global economy and the great recession in the U.S.

42.     In 2011, Technomarine S.A. appointed Jacques-Philippe Auriol as its new Chief Executive Officer and Eduord Lotthe as its Chief Financial Officer.

43.     Over Two years later, Technomarine appointed Bernard Crochon as its Chief Executive Officer of Technomarine USA, Inc., Technomarine's subsidiary in North America.

44.     Under the helm of Auriol, Lotthe, and Crochon, Technomarine decided not to invest in leather goods, clothing, and accessories, which ultimately forced Dimitri & Co. to allow the license agreements for these products to expire and caused it to lose the significant investment it made in developing, manufacturing, and marketing these products.

45.     In addition, Technomarine's decision not to invest in those products hurt the Technomarine brand presence, goodwill, and business value in Latin, Central America, Mexico, and the U.S.

46.     On or about July 2013, Auriol and Technomarine S.A.'s management team (including Lotthe and Crochon) bought out all of the company's shares.

47.     With the large debt on Technomarine's books from the buyout, Technomarine S.A. began looking for additional revenue streams to increase its cash flow in order for it to meet its debt obligation.

48.     To that end, Dimitri & Co. appointed Technomarine's North American subsidiary, Technomarine USA, Inc. as a distributor of Technomarine eyewear products in the U.S., Canada, and the Caribbean.

49.     On August 25, 2014, Technomarine USA, Inc. and Dimitri & Co. entered into a distributorship agreement ("Eyewear Distributorship Agreement") whereby Dimitri & Co. (i) appointed Technomarine USA the exclusive distributor of Technomarine's eyewear products in U.S. and the Caribbean and explicitly carving out Dimitri & Co.'s existing dealers in the U.S.,

Puerto Rico, Aruba, and Venezuela from Technomarine USA's exclusive territory, (ii) requiring Technomarine USA to refrain from engaging directly or indirectly into any business relationship with a competing brand, and (iii) requiring Technomarine USA to meet minimum purchase quota for each year the agreement remains in effect. See Eyewear Distributorship Agreement at ¶¶ 1.1, 2.1, and 10.2. A copy of the Eyewear Distributorship Agreement is attached hereto as Exhibit "C."

50.     Around the same time, Technomarine was falling behind on paying its suppliers which resulted in significant delays in filling Dimitri& Co.'s watch orders.

51.     After several complaints by Dimitri & Co. regarding the delays in fillings its orders, Technomarine informed Dimitri & Co. that it would no longer be able to fill the watch orders because the suppliers were refusing to supply watch products until Technomarine covered the arrearages. This left Dimitri & Co. with no other alternative than to advance payment for its watch orders so that Technomarine could fill the orders which will in turn would allow Dmitri & Co. to supply the necessary inventory for its dealers to meet the market demands in Latin, Central America, and Mexico.

52.     Technomarine simultaneously began offering its newest products for sale at its outlets, its website, www.technomarinea.com, and its online retail outlets at substantially discounted retail prices, which were much lower than the prices offered by the dealers.

53.     Technomarine is able to sell its watches at these lower price points because of the tremendous markup and profit margin it has as the manufacturer of these products which is not available to Dimitri & Co. and the dealers.

54.     This decision caused Dimitri & Co.'s and the dealers' sales to plummet and has caused significant damage to the Technomarine brand and business value.

11

55.     Despite several pleas by Dimitri & Co. for help and Technomarine's promises to "investigate" these practices, Technomarine failed to take any remedial actions to rectify this issue.

56.     To make matters worse, Technomarine began selling its products through discount-retail stores such as Costco which undermined Dimitri & Co.'s advertising and marketing efforts and hurt the Technomarine brand image in Latin, Central America, and Mexico as consumers would not typically associate Technomarine's high-end watches and eyewear products with discount-retail stores such as Costco.

57.     The news of Technomarine's financial difficulties reached the dealers in Latin America, Central America, and Mexico.

58.     Unbeknownst to Dimitri & Co., rumors began swirling about the possibility of Technomarine filing for bankruptcy protection which made it virtually impossible for Dimitri & Co. to collect on its receivables from the dealers and to obtain favorable credit terms from its suppliers to continue to do business.

59.     Unbeknownst to Dimitri & Co., Technomarine began negotiating the sale of its assets, including the Technomarine Marks, to the Invicta Defendants in late 2014.

60.     Upon information and belief, the Invicta Defendants agreed to purchase Technomarine's assets on the condition that Technomarine terminate all relationships with Dimitri & Co. and its dealers.

61.     To that end, Technomarine, at the direct of the Invicta Defendants, ramped up its liquidation efforts of the newest watch products in a concerted effort to harm Dimitri & Co. and force its dealers out of business.

62.     Technomarine knew that Dimitri & Co. and the dealers would not be able to compete with the discounted retail prices that Technomarine was offering to customers and

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

attempted to capitalize on the financial difficulties it created for Dimitri & Co. by manufacturing defaults under the Distributorship and License Agreements to terminate both agreements in order for it complete the transaction with the Invicta Defendants.

63.     In addition, Technomarine USA, Inc. placed several orders for eyewear products from Dimitri & Co. but was not able to pay for those products due to Technomarine's cash flow problems. Instead, Technomarine USA offered to offset the price of the eyewear products against the royalties Dimitri & Co. owed Technomarine S.A. under the License and Distribution Agreement. This exacerbated Dimitri & Co.'s financial difficulties.

64.     Dimitri & Co.'s sales has significantly dwindled as a result of Technomarine's sharp and dishonest business practices.

65.     Throughout the course of the relationships between Technomarine and Dimitri & Co., Dimitri & Co. has invested millions of dollars and countless hours towards the development of the Technomarine brand and good will, and the development of the Technomarine dealer network, which have generated $48 million in sales for Technomarine over the past 15 years and an additional $3.2 million in royalty payments for the eyewear products.

66.     Technomarine, in addition to acting contrary to law, is ignoring the significant personal and financial contributions that Dimitri & Co., and it principal Demetrio Lampru, made to Technomarine's business and the goodwill and reputation of the Technomarine brand in order to complete the sale of Technomarine's assets to the Invicta Defendants.

67.     Indeed, Defendant Lalo has explicitly told Dimitri & Co. that he is now the owner of all of Technomarine's assets, including the Technomarine Marks, and has demanded that Dimitri & Co. ceasing using those Marks in the operation of its business.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

68.     The recent conduct of Defendants entirely contravenes the basic principles of the parties' long standing relationship, violates the Lanham Act and Florida's Trademark and Unfair and Deceptive Trade Practices Statutes, among other legal principals.

69.     All conditions precedent to the commencement of this action have occurred, or have been performed, excused, satisfied or waived.

70.     Plaintiff Dimitri & Co has been compelled to retain the services of the undersigned counsel and has agreed to pay its attorneys a reasonable fee for the services rendered.

**Count I**
**Violation of the Lanham Act (Trademark Dilution – 15 U.S.C. § 1125(c))**
**(Against all Defendants)**

71.     Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 70, *supra*, as if fully set forth herein.

72.     The Technomarine Marks are "famous" within the meaning of the Lanham Act.

73.     The Technomarine Defendants, initially on their its own and subsequently at the direction of the Invicta Defendants, have used the Technomarine Marks in commerce in connection with the sale of their watch and eyewear products.

74.     Defendants' acts in flooding the market with Technomarine products as a part of its liquidation plans as more specifically set forth above have diluted and continue to dilute the Technomarine Marks of which Plaintiff is the exclusive licensee.

75.     These acts violate the Lanham Act, have injured and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial, as well as cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of the Technomarine Marks.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

76.     Defendants' wrongful conduct occurred after the Technomarine Marks became famous.

77.     Defendants acted knowingly, deliberately and willfully with the intent to trade on the goodwill and reputation associated with the Technomarine Marks which were exclusively licensed to Dimitri & Co. and to dilute such Marks.

78.     Defendants' conduct is willful, wanton, and egregious.

79.     Dimitri & Co. has no adequately remedy at law to compensate it fully for the damages that have been caused and which will continue to be cause by Defendants' wrongful acts unless they are enjoined by this Court.

80.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from continuing to use the Technomarine Marks, requiring Defendants to deposit the sale proceeds from the liquidation efforts, as well as the sale of Technomarine's assets to the Invicta Defendants, in the Court registry pending the resolution of this litigation, and to recover all damages, including attorneys' fees, that Dimitri & Co. has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, along with the costs of this action.

## Count II
### Violation of Florida's Anti-dilution statute, Fla. Stat. § 495.151
**(Against all Defendants)**

81.     Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 80, *supra*, as if fully set forth herein.

82.     The Technomarine Marks are "famous" within the meaning of the Lanham Act.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

83.     The Technomarine Defendants initially on their own and subsequently at the direction of the Invicta Defendants, have used the Technomarine Marks in commerce in connection with the sale of their watch and eyewear products.

84.     Defendants' acts in flooding the market with Technomarine products as a part of its liquidation plans as more specifically set forth above have diluted and continue to dilute the Technomarine Marks, of which Plaintiff is the exclusive licensee.

85.     These acts violate the Lanham Act, have injured and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial, as well as cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of the Technomarine Marks.

86.     Defendants' wrongful conduct occurred after the Technomarine Marks became famous.

87.     Defendants acted knowingly, deliberately and willfully with the intent to trade on the goodwill and reputation associated with the Technomarine Marks which were exclusively licensed to Dimitri & Co. and to dilute such Marks.

88.     Defendants' conduct is willful, wanton, and egregious.

89.     Dimitri & Co. has no adequately remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' wrongful acts unless they are enjoined by this Court.

90.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from continuing to use the Technomarine Marks, requiring Defendants to deposit the sale proceeds from the liquidation efforts as well as the sale of Technomarine's assets to the Invicta Defendants in the Court registry pending the resolution of this litigation, and to recover all

damages, including attorneys' fees, that Dimitri & Co. has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, along with the costs of this action.

### COUNT III
### Common Law Trademark Dilution
### (Against all Defendants)

91.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 90, *supra*, as if fully set forth herein.

92.    The Technomarine Marks are "famous" within the meaning of the Lanham Act.

93.    The Technomarine Defendants, initially on their own and subsequently at the direction of the Invicta Defendants, have used the Technomarine Marks in commerce in connection with the sale of their watch and eyewear products.

94.    Defendants' acts in flooding the market with Technomarine products as a part of its liquidation plans as more specifically set forth above have diluted and continue to dilute the Technomarine Marks, of which Plaintiff is the exclusive licensee.

95.    These acts violate the Lanham Act, have injured and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial, as well as cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of the Technomarine Marks.

96.    Defendants' wrongful conduct occurred after the Technomarine Marks became famous.

97.    Defendants acted knowingly, deliberately and willfully with the intent to trade on the goodwill and reputation associated with the Technomarine Marks which were exclusively licensed to Dimitri & Co. and to dilute such Marks.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

98.     Defendants' conduct is willful, wanton, and egregious.

99.     Dimitri & Co. has no adequately remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' wrongful acts unless they are enjoined by this Court.

100.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from continuing to use the Technomarine Marks, requiring Defendants to deposit the sale proceeds from the liquidation efforts as well as the sale of Technomarine's assets to the Invicta Defendants in the Court registry pending the resolution of this litigation, and to recover all damages, including attorneys' fees, that Dimitri & Co. has sustained and will sustain, and all gains, profits, and advantages obtained by Defendant as a result of their infringing acts alleged above in an amount not yet known, along with the costs of this action.

## COUNT IV
## Violation of Lanham Act – Unfair Competition (15 U.S.C. §1125(a))
### (Against all Defendants)

101.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 100, *supra*, as if fully set forth herein.

102.    Defendants' wrongful conduct has diluted and will continue to dilute the Technomarine Marks,  and has caused and will continue to cause irreparable harm and significant damage to Dimitri & Co.'s business, reputation and goodwill in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

103.    Defendants acted intentionally, deliberately, and willfully to harm Dimitri & Co. and force it out of business in order for them to complete the asset sale and purchase transaction between them and to reap the benefits of Dimitri & Co.'s labor and investment in the development of the Technomarine brand, goodwill and reputation.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

104.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from continuing to use the Technomarine Marks, requiring Defendants to deposit the sale proceeds from their liquidation efforts as well as the sale of Technomarine's assets to the Invicta Defendants in the Court registry pending the resolution of this litigation, and to recover all damages, including attorneys' fees, that Dimitri & Co has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, along with the costs of this action.

**COUNT V**
**Common Law Unfair Competition**
**(Against all Defendants)**

105.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 104, *supra*, as if fully set forth herein.

106.    Defendants' wrongful conduct has diluted and will continue to dilute the Technomarine Marks, and has caused and will continue to cause irreparable harm and significant damage to Dimitri & Co.'s business, reputation and goodwill in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

107.    Defendants acted intentionally, deliberately, and willfully to harm Dimitri & Co. and force it out of business in order for them to complete the asset sale and purchase transaction between them and to reap the benefits of Dimitri & Co.'s labor and investment in the development of the Technomarine brand, goodwill and reputation.

108.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from continuing to use the Technomarine Marks, requiring Defendants to deposit the sale proceeds from their liquidation efforts as well as the sale of Technomarine's assets to the Invicta Defendants in the Court registry pending the resolution of this litigation, and to recover all

19

damages, including attorneys' fees, that Dimitri & Co has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, along with the costs of this action.

**COUNT VI**
**Civil Conspiracy**
**(Against all Defendants)**

109.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 108, *supra*, as if fully set forth herein.

110.    Defendants have engaged in a conspiracy to harm Dimitri & Co. and force it out of business.

111.    Defendants have taken overt acts in furtherance of the conspiracy. For example, the Technomarine Defendants, at the direction of the Invicta Defendants, have ramped up liquidation efforts by flooding the market with Technomarine products at substantially lower retail prices than Dimitri & Co. and its dealers can offer the end consumers to put Dimitri & Co. out of business.

112.    Defendants, acting in concert, possess a particular power of coercion that would not exist if each of the Defendants was acting alone.

113.    Dmitri & Co. has been damaged, has suffered, and will continue to suffer irreparable harm as a result of Defendants' conspiracy and lacks an adequate remedy law for Defendants' wrongful conduct.

114.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendant from continuing to use the Technomarine Marks, requiring Defendants to deposit the sale proceeds from its liquidation efforts as well as the sale of its assets to the Invicta Defendants in the Court registry pending the resolution of this litigation, and to recover all damages, including attorneys' fees, that Dimitri & Co has sustained and will sustain, and all gains, profits, and

20

**ZARCO EINHORN SALKOWSKI & BRITO**
**MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428**

advantages obtained by Defendant as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## COUNT VII
## Violation of Florida Deceptive and Unfair Trade Practices Act
### (Against all Defendants)

115.    Plaintiffs incorporate each and every allegation in paragraphs 1 through 114, *supra*, as if fully set forth herein.

116.    This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, § Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

117.    Defendants have violated FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices by, *inter alia,* (i) failing to fill Dimitri & Co.'s order which force it to advance the price of the products ordered to Technomarine in order to obtain those products and provide adequate inventory to its dealers, (ii) flooding the Latin, Central America and Mexico markets with Technomarine products at substantially lower retail price than Dimitri & Co. and its dealers can offer in an effort to force them out of business, (iii) failing to pay for eyewear product orders by Technomarine USA placed which exacerbated Dimitri & Co.'s financial difficulties, (iv) diluting the Technomarine Marks which are exclusively licensed to Dimitri & Co. and for which it paid a substantial sum of money, and (v) demanding, through Defendant Lalo, that Dimitri & Co. cease using the Technomarine Marks in its business in contravention of the License Agreement.

118.    Dmitri & Co. has been damaged, has suffered, and will continue to suffer irreparable harm as a result of Defendants' conspiracy and lacks an adequate remedy law for Defendants' wrongful conduct.

Zarco Einhorn Salkowski & Brito
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

119.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendant from continuing to use the Technomarine Marks, requiring Defendants to deposit the sale proceeds from its liquidation efforts as well as the sale of its assets to the Invicta Defendants in the Court registry pending the resolution of this litigation, and to recover all damages, including attorneys' fees, that Dimitri & Co has sustained and will sustain, and all gains, profits, and advantages obtained by Defendant as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## COUNT VIII
## Breach of the Distributorship Agreement
### (Against Technomarine Asia Limited)

120.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 119, *supra*, as if fully set forth herein.

121.    On January 1, 2013, Dimitri & Co. entered into a binding Distributorship Agreement with Technomarine S.A.'s Asian subsidiary, Technomarine Asia Limited, for the distribution of Technomarine Watch Products in Latin, Central America, and Mexico.

122.    Technomarine Asia Limited has breached the Distributorship Agreement by, *inter alia*, (i) failing to fill Dimitri & Co.'s orders as a result of its failure to pay its suppliers, (ii) forcing Dimitri & Co. to use its capital to advance payment to the suppliers in order to receive the necessary inventory to support its dealers, and (iii) flooding the Latin, Central America, and Mexico markets with Technomarine products at substantially lower retail prices than Dimitri & Co. could offer the retail consumer, (iv) engaging in dishonest business practices in effort to force Dimitri & Co. and its dealers out of business.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

## COUNT IX
## Breach of the License Agreement
### (Against Technomarine S.A.)

123.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 122, *supra*, as if fully set forth herein.

124.    On January 1, 2013, Dimitri & Co. entered into a binding License Agreement with Technomarine S.A. for the purpose of becoming the exclusive licensee of the Technomarine Marks in connection with the development, production, marketing, and sale of eye wear products in Latin, Central America, Mexico and the U.S.

125.    Technomarine S.A. has breached the License Agreement by, *inter alia*, (i) flooding the Latin, Central America, and Mexico markets with Technomarine products thereby diluting the Technomarine Marks that were exclusively assigned to Dimitri & Co., and (ii) engaging in sharp and dishonest business practices in effort to force Dimitri & Co. out of business so that it can reap the benefits of its investment in the eyewear products.

126.    Dmitri & Co. has been damaged, and will continue to suffer harm as a result of Defendants' wrongful conduct.

## COUNT X
## Breach of the Eyewear Distributorship Agreement
### (Against Technomarine USA, Inc.)

127.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 126, *supra*, as if fully set forth herein.

128.    On August 25, 2014, Dimitri & Co. entered into a binding Eyewear Distributorship Agreement with Technomarine S.A.'s North America subsidiary, Technomarine USA, Inc., for the purpose of appointing Technomarine USA as the exclusive distributor of eyewear products in the U.S., Canada, and the Caribbean.

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

129.    Technomarine USA has breached the Eyewear Distributorship Agreement by, *inter alia*, (i) failing to pay for eyewear product orders it placed with Dimitri & Co. as provided for the Eyewear Distributorship Agreement and (ii) engaging in dishonest business practices in effort to force Dimitri & Co. out of business so that it can reap the benefits of its investment in the eyewear products.

130.    Dmitri & Co. has been damaged, has suffered, and will continue to suffer irreparable harm as a result of Defendants' wrongful conduct and lacks an adequate remedy law for Defendants' wrongful conduct.

## COUNT XI
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Technomarine Defendants)

131.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 130, *supra*, as if fully set forth herein.

132.    Dimitri & Co. has had valid agreements with the Technomarine Defendants for the purposes of (i) appointing Dimitri & Co. the exclusive distributorship of Technomarine watch products in Latin, Central America, and Mexico, (i) granting Dimitri & Co. an exclusive license of the Technomarine Marks in connection with the development, production, marketing, and sales of Technomarine eyewear products, and (iii) appointing Technomarine USA, Inc. as the exclusive distributorship of all Technomarine eyewear products in the U.S., Canada, and the Caribbean.

133.    Technomarine Defendants breached the implied covenant of good faith and fair dealing in the Distributorship, License, and Eyewear Distributorship Agreement by, *inter alia,* (i) forcing Dimitri & Co. to use its own capital to meet Technomarine's obligations to its suppliers in order to receive the necessary inventory to support the dealers, (ii) providing watch products to discount-retail store in the Latin, Central American, and Mexico markets which they knew or

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

should have known, would compete with Dmitri & Co., (iii) failing to offer all of its new products to Dimitri & Co. while offering those very same products to competing outlets and distributors, (iv) offering Technomarine products for sale at a substantially lower retail prices that significantly hurt the Technomarine brand image and undermined Dimitri & Co.'s name, reputation, and goodwill, and (v) starving out Dimitri & Co. financially and making it difficult or near impossible for Dimitri & Co. to collect on the receivables from the dealers or obtain favorable credit terms from its suppliers to continue to do business.

134.    Dmitri & Co. has been damaged, has suffered, and will continue to suffer irreparable harm as a result of Defendants' wrongful conduct and lacks an adequate remedy law for Defendants' wrongful conduct.

**COUNT XII**
**Unjust Enrichment**
**(Against all Defendants)**

135.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 134, *supra*, as if fully set forth herein.

136.    Dimitri & Co. conferred a tangible benefit on Technomarine and Invicta Defendants in that it invested millions of dollars in (i) establishing the dealer network for Technomarine products in Latin, Central America, Mexico, and the U.S., (ii) promoting the Technomarine brand, goodwill, and reputation, (iii) marketing and advertising the Technomarine products and raising the Technomarine brand awareness in Latin, Central America, and Mexico, (iv) developing, manufacturing, marketing and selling Technomarine eyewear products, and (v) generating millions of dollars in revenue for Defendants as a direct result from Dimitri & Co.'s tireless effort and dedication to the Technomarine brand.

25

**ZARCO EINHORN SALKOWSKI & BRITO**
**MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428**

137.    Defendants have accepted and retained the benefits conferred upon them by Dimitri & Co. such that allowing them to retain such benefits without adequately compensating Dimitri & Co. for its efforts would be harsh and inequitable.

138.    Dmitri & Co. has been damaged, has suffered, and will continue to suffer irreparable harm as a result of Defendants' wrongful conduct.

139.    In light of the foregoing, Plaintiff is entitled to recover all damages resulting from Defendants' unjust enrichment, including the fair value of the benefits it conferred upon Defendants, all gains, profits, and advantages obtained by Defendant as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

**COUNT IXV**
**Action for Preliminary and Permanent Injunction**
**(Against all Defendants)**

140.    Dimitri & Co. incorporates each and every allegation in paragraphs 1 through 139, *supra*, as if fully set forth herein.

141.    This is an action for preliminary and permanent injunctive relief.

142.    Defendants' dilution of the Technomarine Marks and unfair competition with Dimitri & Co. have caused and will continue to cause irreparable harm to Dimitri & Co.

143.    Unless restrained by this Court, Defendants' continued use the Technomarine Marks will continue to cause irreparable harm to Dimitri & Co.'s name, goodwill and reputation, which cannot be adequately remedied by compensatory damages.  Therefore, Dimitri & Co. has no adequate remedy at law.

WHEREFORE, Plaintiff, Dimitri & Co., respectfully requests the following relief:

(1)    For a preliminary and permanent injunction against Defendants, and each of their agents, employees, attorneys, and all others in active concert or participation with

26

**ZARCO EINHORN SALKOWSKI & BRITO**
**MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428**

them, preventing them from diluting the Technomarine Marks by (i) requiring them to cease their liquidation efforts of all Technomarine watch products in Latin America, Central America and Mexico, and eyewear products in the U.S., Canada, and the Caribbean, (ii) requiring Defendants to deposit all sale proceeds and gains from such liquidation efforts in the Court registry pending the resolution of this lawsuit, (iii) requiring Defendants to deposit the sale proceeds from the sale and purchase of Technomarine's assets in the Court registry, and (iv) directing the Invicta Defendants not to interfere with Dimitri & Co.'s use of the Technomarine Marks in connection with its eyewear business.

(2)     For a money judgment against Defendants in an amount to be determined at trial, for actual and consequential damages together with prejudgment interest allowed by law;

(3)     For an award equal to three (3) times the earnings and revenues obtained by Defendants as allowed by § 35 of the Lanham Act, 15 U.S.C. § 1117;

(4)     For an award of exemplary or punitive damages because of the willful, intentional, and malicious nature of Defendants' conduct;

(5)     For Plaintiff's costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham Act, Florida Trademark Act and FDUPTA; and

(6)     For such other and further relief as this Court deems just and proper.


Dated:  March ___, 2015                     Respectfully submitted,

                                            ZARCO EINHORN SALKOWSKI & BRITO, P.A.
                                            *Counsel for Plaintiffs*
                                            Miami Tower
                                            100 S.E. 2nd Street, 27th Floor
                                            Miami, Florida 33131

27

Telephone: (305) 374-5418
Facsimile: (305) 374-5428


By: /s/ Alejandro Brito
     ROBERT ZARCO
     Florida Bar No. 502138
     E-mail: rzarco@zarcolaw.com
     ALEJANDRO BRITO
     Florida Bar No. 098442
     E-mail: abrito@zarcolaw.com
     BESHOY RIZK
     Florida Bar. No. 93808
     E-mail:brizk@zarcolaw.com

**ZARCO EINHORN SALKOWSKI & BRITO**
**MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428**