UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-21038-CIV-MOORE/MCALILEY

CASA DIMITRI CORP.

    Plaintiff,

v.

TECHNOMARINE S.A., et al.

    Defendants.
_____/

## REPORT AND RECOMMENDATION

The Court has before it Plaintiff's Renewed Motion for Preliminary Injunction. [DE 133]. This matter was referred to me by the Honorable K. Michael Moore and is fully briefed. [DE 134, 144]. For the reasons set forth below, I recommend that the motion be denied.

### I. Background

#### A. Procedural history

This action arises from the lengthy and complex relationship between Plaintiff and several related TechnoMarine companies concerning the manufacture and sale of watches and sunglasses bearing the TechnoMarine marks. Before I turn to the factual record, I summarize the procedural history of this motion.

Plaintiff brought this action on March 13, 2015, alleging Defendants had violated the Lanham Act through trademark dilution and unfair competition and violated the Florida

1

anti-dilution statute; had engaged in common law trademark dilution, common law unfair competition and civil conspiracy; had violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); and was liable for breach of contract, breach of the implied duty of good faith and fair dealing and unjust enrichment, in connection with the manufacture and sale of eyewear. [DE 1]. The Complaint sought damages and a preliminary and permanent injunction. [*Id*]. Plaintiff also filed a separate motion for preliminary injunction asking the Court to enjoin Defendants from infringing on Plaintiff's trademark rights in the eyewear. [DE 38].

On November 4, 2015, and November 17, 2015, the Court held an evidentiary hearing on the motion for preliminary injunction, hearing testimony from a representative of Plaintiff, Demetrio Lampru, a representative of TechnoMarine, Bernard Crochon, and a representative of Invicta, Eyal Lalo. [DE 79, 115]. On January 25, 2016, Plaintiff filed an Amended Complaint, adding claims of trademark infringement, copyright infringement and patent infringement, and dropping its claims for breach of contract, civil conspiracy, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. [DE 116]. The Amended Complaint also names TechnoMarine S.A. as an involuntary Plaintiff under Federal Rule of Civil Procedure 19. [DE 116, ¶ 4].

With the filing of the Amended Complaint, I held a status conference to determine its impact on Plaintiff's request for preliminary injunction. At that time Plaintiff informed the Court that it intended to move for preliminary injunction on some or all of its new claims. To avoid duplicative motions, I denied the pending motion for preliminary

injunction without prejudice and directed Plaintiff to file a renewed motion, raising every ground under which it sought injunctive relief. With the parties' agreement, the evidentiary record is limited to the evidence presented at the evidentiary hearing. [DE 124].[1]

On February 23, 2016, Plaintiff filed a renewed motion for preliminary injunction, seeking injunctive relief based only on the Lanham Act claims for infringement and unfair competition, and the claim under FDUPTA, in connection with eyewear bearing the TechnoMarine trademark. [DE 133]. The renewed motion for preliminary injunction is the subject of this Report and Recommendation.

B. **Factual background**

In 2004, Defendant TechnoMarine S.A., a Swiss corporation, and Plaintiff entered into an exclusive licensing agreement authorizing Plaintiff to design, manufacture, market and sell eyewear products bearing the TechnoMarine trademarks in the United States, Central America, the Caribbean and Mexico.[2] [DE 79, p. 52]. From 2004, until the events giving rise to this action, Plaintiff invested significant time and capital designing, manufacturing, and promoting eyewear bearing the TechnoMarine marks, as well as establishing the necessary distribution network for those products. [DE 79, pp. 44-50, 57-62, 89-90]. Prior to entering into this licensing agreement, TechnoMarine did not sell

---

[1] I also permitted the parties to supplement the record with affidavits that addressed new matters raised by the new claims. [DE 124]. They chose not to.

[2] Plaintiff also entered into a Distribution Agreement with TechnoMarine Asia Limited, granting Plaintiff the right to distribute watch products bearing the TechnoMarine Marks, and a Distribution Agreement with TechnoMarine USA, Inc., authorizing TechnoMarine USA to distribute Plaintiff's eyewear with the TechnoMarine Marks. [DE 1-2, 1-4]. Neither of these agreements is relevant to the issues raised in the motion for preliminary injunction.

3

eyewear bearing its trademarks. [DE 79, pp, 44-5, 239-40].

By 2014, Plaintiff heard rumors that TechnoMarine S.A. was experiencing financial difficulties. In September 2014, Plaintiff's representatives met with representatives of TechnoMarine S.A. who told Plaintiff that TechnoMarine S.A. was seeking new investors to address its financial problems. [DE 79, pp. 90-4]. In November 2014, TechnoMarine S.A. informed Plaintiff that it had found a new investor. [*Id.* at 96-8]. In December 2014, TechnoMarine S.A. began proceedings in the Swiss bankruptcy court. [DE 79, p. 207]. It did not provide formal notice to Plaintiff that it had commenced bankruptcy proceedings.[3] [DE 79, pp. 99-101]. The bankruptcy court appointed a Trustee. [DE 115, pp. 11-2].

Months later, in early February 2015, TechnoMarine S.A. informed Plaintiff that it was in discussions with Defendant Invicta Watch Company of America as a possible investor, but did not provide any details about the effect this might have on Plaintiff's agreements with TechnoMarine S.A. [DE 79, pp. 104-5]. On March 13, 2016, after meeting with a representative of Invicta, and becoming concerned about the effect, of a sale of TechnoMarine to Invicta, on its interest in the TechnoMarine Marks, Plaintiff filed this action. [*Id.* at pp. 112-6, 120].

TechnoMarine S.A. and Invicta entered into a Term Sheet which provided that

---

[3] In their response to the preliminary injunction motion, Defendants state that "Plaintiffs were informed of the bankruptcy at a meeting held between Invicta, TechnoMarine USA and Plaintiffs at which it was confirmed that Invicta and TM Brands were purchasing TechnoMarine's assets out of bankruptcy." [DE 144, p. 4, ¶ 4]. In support of this factual assertion, Defendants cite two pages of the cross examination of Plaintiff's representative. [*Id.*]. Rather than supporting Defendant's factual assertion, this testimony contradicts it. In those two pages, Plaintiff's representative testifies three times that he was **not** told about the bankruptcy proceeding in that meeting. [DE 79, pp. 163-4]. The Court is disturbed by Defendant's misrepresentation of this testimony.

4

Invicta would purchase the TechnoMarine Marks. [*Id.* at pp. 215-16]. On March 31, 2016, Invicta and TM Brands, a wholly owned subsidiary of Invicta, (in this lawsuit, the "Invicta Defendants") entered into an Asset Purchase Agreement (APA) with TechnoMarine S.A. and TechnoMarine USA. [DE 79, p. 217, Def. Ex. C]. The APA provided that Invicta and TM Brands would purchase TechnoMarine S.A.'s rights to the TechnoMarine Marks, but not TechnoMarine S.A.'s liabilities, which included the License Agreement with Plaintiff. [DE 115, pp. 11-5].

Neither TechnoMarine S.A. nor Invicta provided Plaintiff formal notice that they were going to seek approval of the sale in the Swiss bankruptcy proceeding. [DE 79, pp. 163-5]. The Swiss bankruptcy trustee, who signed the APA, was involved in the entire process, from the term sheet and the execution of the APA through the finalization of the sale. [DE 115, pp. 11-2]. The APA was ultimately approved in the Swiss bankruptcy. [DE 115, p. 12].

After approval of the APA, the Invicta Defendants notified Plaintiff's eyewear manufacturer that it now owned the TechnoMarine Marks and directed that manufacturer to cease doing business with Plaintiff. [DE 79, pp. 122-5, and Ex. 8]. The manufacturer in turn informed Plaintiff that it would cease production of the eyewear for Plaintiff, and demanded payment of Plaintiff's outstanding balance and compensation for lost orders. [DE 79, pp. 126-9]. This caused Plaintiff to default on its obligation to provide eyewear to its retailers and customers. [DE 79, pp. 126-8]. Invicta then placed orders with the manufacturer to produce eyewear products bearing the TechnoMarine Marks, which are

5

virtually identical to the eyewear products Plaintiff had designed and sold under the License Agreement. [DE 79, pp. 68-70, 145-8]. Invicta currently markets, advertises and sells these eyewear products. [*Id.*]

Well after the signing of the APA, by letters dated May 15, 2015, and June 25, 2015, the TechnoMarine entities purported to terminate the License Agreement. The first letter, sent by TechnoMarine Asia, Ltd. and TechnoMarine, S.A., stated that the License Agreement between TechnoMarine S.A. and Plaintiff (as well as the other agreements between TechnoMarine entities and Plaintiff) was terminated because the TechnoMarine entities had sold the trademarks in bankruptcy. [DE 79, p. 184, Def. Ex. A]. The letter also stated "There may exist other grounds for termination under the terms of the respective agreements. The fact that TechnoMarine has not listed those grounds does not constitute a waiver." [*Id*]. The June 25, 2015 Termination Notice, sent by TechnoMarine S.A., purports to terminate the License Agreement for cause. [DE 79, p. 131, Pl. Ex. 10].

## II.   Analysis

A preliminary injunction is an extraordinary and drastic remedy for which Plaintiff bears the burden of persuasion. *Tracfone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F.Supp.3d 1321, 1325 (S.D. Fla. 2015). In order to carry its burden, Plaintiff must clearly establish that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issues, the injunction would not be adverse to the public interest."

*American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Board*, 557 F.3d 1177, 1198 (11th Cir. 2009). Failure to show any of these factors is fatal to the request for preliminary injunction. *Id.*

To establish a substantial likelihood of success on the merits, a plaintiff must "demonstrate a likelihood of success at trial as to both its *prima facie* case and the affirmative defenses asserted by the defendant." *Tracfone*, 102 F.Supp.3d at 1325. Here, Plaintiff has failed to carry its burden of persuasion to clearly establish a substantial likelihood of success on the merits on either its *prima facie* case or Defendants' anticipated defenses.[4] Because I find that Plaintiff has not established the first element required for a preliminary injunction, I do not address the remaining three elements.

### A. Plaintiff's *prima facie* case

Plaintiff asks for injunctive relief on its Lanham Act claims for infringement and unfair competition, and its FDUPTA claim, in connection with the sale of eyewear bearing the TechnoMarine Marks. [DE 133]. The same analysis applies to consideration of each of these claims. *Suntree Technologies, Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012).

To prevail, Plaintiff must show that it has trademark rights in the marks at issue, and that the other party has used a mark that is confusingly similar. *Id.* at 1346. The parties

---

4 Defendants have not answered the Amended Complaint, as they filed a motion to dismiss; that motion is pending. Thus, Defendants have not yet pled any affirmative defenses. However, they raise certain arguments in both their motion to dismiss and in response to the pending preliminary injunction motion. Those defenses would be in the nature of an affirmative defense if Defendant answers the Amended Complaint.

concede that Defendants are manufacturing and marketing eyewear that is virtually identical to Plaintiff's eyewear. [DE 79, pp. 68-9] Thus, Plaintiff has shown a substantial likelihood of success in proving the second element of its *prima* facie case. The issue in dispute is whether Plaintiff has clearly shown a substantial likelihood of success in establishing that it has rights in the TechnoMarine Marks.

Plaintiff asserts that the exclusive License Agreement transferred to it the right to use the TechnoMarine Marks on eyewear products, and divested TechnoMarine S.A. of that right. [DE 133, p. 10-1]. Thus, Plaintiff contends, TechnoMarine S.A. could not have transferred the rights Plaintiff received under the License Agreement to the Invicta Defendants through the APA. Stated another way, Plaintiff argues that the bundle of trademark rights purchased from TechnoMarine S.A. by the Invicta Defendants in the Swiss bankruptcy necessarily did not include the right to use the TechnoMarine S.A. marks on eyewear, because TechnoMarine S.A. no longer owned those rights. As a result, Plaintiff argues that it continues to hold the rights to use the TechnoMarine Marks on eyewear, and therefore, satisfies the first requirement for bringing a claim under the Lanham Act.

Courts have found that an exclusive licensing agreement may transfer trademark rights to a licensee, which may bar the trademark owner from transferring those rights to a third party. *See, e.g, Gray v. Novell, Inc.*, 412 Fed.Appx. 199 (11th Cir. 2011); *Aceto Corporation v. TherapeuticsMD, Inc.*, 953 F.Supp.2d 1269 (S.D. Fla. 2013); *Drew Estate Holding Co., LLC v. Fantasia Dist., Inc.*, 875 F.Supp.2d 1360 (S.D. Fla. 2012); *Basic Fun,*

*Inc. v. X-Concepts, LLC*, 157 F.Supp.2d 449 (E.D. Pa. 2001). Whether a particular licensing agreement grants a licensee enforceable rights in a trademark depends on the terms of the agreement. *See Drew*, 875 F.Supp.2d at 1366 ("A licensee's standing to bringing a trademark infringement claim 'largely depends on the rights granted to the licensee in the licensing agreement'").[5]

The License Agreement at issue here grants Plaintiff an exclusive license to manufacture and "commercialize" high quality eyewear bearing the TechnoMarine Marks. [DE 79, p. 51, Pl. Ex. 1, §§ 1 and 2]. The license is limited to the United States, Venezuela, Colombia, Ecuador, Bolivia, Mexico, Panama, Nicaragua, Costa Rica, Guatemala, Salvador, Bolivia, Belize, and all countries in the Caribbean. [*Id.* at § 3.1].

Moreover, Section 15 of the License Agreement provides that the Licensee (Plaintiff) "acknowledges Licensor's right of ownership over the Trademark and undertakes to the use the Trademark exclusively in his capacity as Licensee . . . ." [*Id.* at § 15.1]. The Agreement further provides that, although the Licensee must report to the Licensor any infringement or unfair competition: "Licensor shall, at its own discretion, decide on the opportunity to initiate any legal action, judicial or extra-judicial, in any case of infringement of the Trademark or any other right regarding the Licensed Articled." [*Id.* at § 15.2].

This is not the time for the Court to make a final determination of the scope of the

---

[5] These cases are factually distinguishable from the action brought by Plaintiff's lawsuit. In particular, the licensees in the cited cases sought to establish their trademark rights under the licensing agreement against third parties, not the putative trademark owner.

rights to the disputed marks that Plaintiff received under the License Agreement. This record, however, does not demonstrate that Plaintiff is substantially likely to establish that it has trademark rights in the disputed marks. Importantly, the Agreement's acknowledgment that the Licensor, TechnoMarine S.A., owns the Trademark, and the reservation to TechnoMarine, S.A., of the right to enforce the TechnoMarine marks, casts doubt on Plaintiff's claim that it currently has rights in the TechnoMarine marks.

In sum, Plaintiff has failed to carry its burden to show a substantial likelihood of success in proving its *prima facie* case of trademark infringement, unfair competition and violations of FDUPTA.

**B.     Defenses**

Because Plaintiff cannot clearly show a substantial likelihood of proving its *prima facie* case, it has not established its right to a preliminary injunction. As an additional matter, Defendants raised two defenses in response to the preliminary injunction motion which, if successful, would defeat Plaintiff's claim of enforceable rights in the TechnoMarine marks under the License Agreement. First, Defendants argue that this Court should recognize the extinguishment of Plaintiff's rights under the License Agreement in the Swiss bankruptcy. [DE 144, pp. 7-9]. Second, Defendants argue that the termination letter dated June 25, 2015, terminated the License Agreement for cause, and Plaintiff therefore has no trademark rights to enforce. [DE 144, pp. 13-14]. Plaintiff has not shown that it is substantially likely to prevail on either on these defenses.

i. Effect of the Swiss bankruptcy

In response to the first defense, Plaintiff argues that Defendants have failed to prove that Plaintiff was given adequate notice of, and an opportunity to participate in, the Swiss bankruptcy proceeding, and thus the proceedings should not be given effect here. [DE 133, pp. 6-8]. Notably, there is no dispute that Plaintiff had actual knowledge of the Swiss bankruptcy proceeding and did not attempt to intervene in the bankruptcy.

Neither party has provided the Court with any evidence of the requirements of the Swiss bankruptcy process, including any notice requirements. This failure is fatal to Plaintiff's motion. At the preliminary injunction stage, it is Plaintiff's burden, as the movant, to provide the Court with sufficient evidence that: (1) Swiss bankruptcy law did not allow Defendants to terminate the License Agreement, (2) Defendants failed to properly follow Swiss law or, (3) Swiss law did not provide Plaintiff's an opportunity to intervene to protect its interest in the TechnoMarine Marks.

Plaintiff has not provided any evidence that the termination of the License Agreement was improper under Swiss law or that Defendants did not comply with Swiss law. As for the argument that Plaintiff did not receive sufficient notice of the bankruptcy proceeding to warrant recognition of the Swiss proceeding in this Court, the evidence thus far presents significant issues of fact regarding the nature of the notice received by Plaintiff, as well as Plaintiff's efforts to determine the status of the Swiss bankruptcy proceeding and its obligation and ability to intervene in the Swiss proceeding.

I thus find that Plaintiff has failed to carry its burden to show a substantial likelihood

11

of success in defeating Defendants' assertion that Plaintiff's rights under the License Agreement were properly terminated in the Swiss bankruptcy.

    ii.    Effect of the termination letter

Similarly, Plaintiff has not shown a substantial likelihood that it would prevail on Defendants' affirmative defense that the License Agreement was terminated by the letter dated June 25, 2015, which explicitly divests Plaintiff of any rights in the TechnoMarine marks.

It is undisputed that Plaintiff did not strictly comply with the terms of the License Agreement. [DE 79, pp. 170-5, 226-8]. Plaintiff argues that the stated grounds for termination are pretextual, as its actions were ratified by TechnoMarine S.A. and, thus, Plaintiff was not in default of the License Agreement. [DE 133, pp. 11-2]. The Court finds a significant factual dispute concerning the effectiveness of the termination later, which precludes a finding that Plaintiff is substantially likely to prevail on this affirmative defense.

## III. Recommendation

In summary, because Plaintiff has failed to clearly establish a likelihood of success on the merits of its claims for infringement and unfair competition under the Lanham Act and violations of FDUPTA, I recommend that the motion for preliminary injunction be denied.

## IV. Objections

The parties may file written objections to this report and recommendation with the

Honorable K. Michael Moore no later than fourteen days from the date of this report and recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida this 26th day of May, 2016.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable K. Michael Moore
Counsel of Record