**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:15-CV-21038-KMM

CASA DIMITRI CORP. d/b/a
DIMITRI & CO., and
TECHNOMARINE, S.A.,

      Plaintiffs,

v.

INVICTA WATCH COMPANY OF
AMERICA, INC., TM BRANDS, LLC, EYAL
LALO, and TECHNOMARINE USA, Inc.,

      Defendants.

_____/

## OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS

## THE AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendants Invicta Watch Company of America, Inc.'s, TM Brands, LLC's, and Eyal Lalo's,[1] Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 119), and Defendant Technomarine USA, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 120).

UPON CONSIDERATION of the Motions, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

---

[1] Mr. Lalo filed a notice adopting the arguments in both of Defendants' motions to dismiss (ECF No. 125). Plaintiffs request that the Court find Mr. Lalo's response untimely, deny the request for dismissal, and order Mr. Lalo to file an answer to the Amended Complaint. The Court denies Plaintiffs' request and herein considers Mr. Lalo's request for dismissal as joined with the requests of the other Defendants.

1

## I.        BACKGROUND

In 2004, Plaintiff Casa Dimitri Corp. d/b/a Dimitri & Co. ("Dimitri & Co.") entered into an exclusive licensing agreement with Defendant Technomarine, S.A. ("Technomarine"), a Swiss corporation.  Am. Compl. ¶¶ 24-25 (ECF No. 116).  That licensing agreement authorized Casa Dimitri Corp. ("Dimitri & Co." or "Plaintiff") to design, manufacture, market, sell, and service eyewear products in the United States, Central America, Latin America, and the Caribbean.  *Id.* ¶ 25.  On January 1, 2013, Dimitri & Co. entered into the most recent exclusive license agreement for Latin and Central America and the United States (the "License Agreement").  *Id.* ¶  27. Dimitri & Co. invested millions of dollars in developing marketing designs and concepts and establishing a supply chain.  *Id.* ¶  29.   It oversaw the manufacturing of the eyewear products and coordinated many other aspects of production and sale of Technomarine products.  *Id.*  In connection with the development of the eyewear product line, Dimitri & Co. and Demetrio Lampru hold four patents, including Patent No. D611521, which is for the development of eyewear products with rotatable temples.  *Id.* ¶ 31.

Technomarine's sales declined from 2007 through 2014, and it was forced to scale back operations in order to meet its debt obligations.  *Id.* ¶¶ 36, 38.  Over the course of several years, Technomarine implemented some changes in order to increase the company's revenues.  *See id.* ¶¶  38-41.   On August 5, 2014, Technomarine USA and Dimitri & Co. entered into a distributorship agreement ("Eyewear Distribution Agreement") whereby Technomarine USA, the North American Subsidiary of Technomarine, became the exclusive distributor of Techomarine's eyewear products in the United States and the Caribbean with certain carve outs for Dimitri & Co.'s existing dealers.  *Id.* ¶ 43.

Dimitri & Co. was aware of Technomarine's difficulties because Technomarine was unable to meet debt servicing obligations which resulted in significant delays for the filling of Dimitri & Co.'s watch orders.  *Id.* ¶ 44.  In December of 2014, unbeknownst to Dimitri & Co., Technomarine filed summary reorganization proceedings in the Swiss bankruptcy courts in order to restructure its debts.  Am. Compl. ¶ 48.  Technomarine had conversations with Invicta and Mr. Lalo regarding a possible acquisition of Technomarine by Invicta.  *Id.* ¶ 49.

In February of 2015, Technomarine notified Dimitri & Co. that it was in confidential negotiations with Invicta regarding Invicta's acquisition of Technomarine. Id.  ¶ 51.  Dimitri & Co. subsequently learned, on or around February 25, 2015, that Technomarine and Invicta entered into a term sheet whereby Invicta would only purchase the Technomarine trademarks (the "Technomarine Marks") from Technomarine.  Id. ¶ 52.  On February 27, 2015, Technomarine organized a meeting to introduce Mr. Lalo to Dimitri & Co. and Mr. Lampru.  *Id.* ¶ 53.  Mr. Lampru left the meeting with the impression that Invicta did not recognize Dimitri & Co.'s exclusive rights in the Technomarine Marks.  *Id.* ¶ 55.

On or about March 4, 2015, Technomarine's management notified Dimitri & Co. that Invicta acquired the Technomarine Marks.  *Id.* ¶ 56.  On March 13, 2015, Dimitri & Co. filed the present lawsuit.  *See* Complaint (ECF No. 1).  On March 23, 2015, Invicta officially announced its acquisition of Technomarine.  Am. Compl.  ¶ 63.  In April of 2015, I.O.V.E.S., Dimitri & Co.'s primary manufacturer of eyewear products, informed Dimitri & Co. that it had received a letter from Invicta that it must cease production of Dimitri & Co. products bearing Technomarine Marks.  *Id.* ¶ 66; Ex. 6.  On May 15, 2015, Technomarine notified Dimitri & Co. for the first time that it had filed reorganization proceedings in the Swiss bankruptcy court.  *Id.* ¶ 68.  By

letter dated June 25, 2015, Technomarine notified Dimitri & Co. that it was terminating the License Agreement. *Id.* ¶ 69; Ex. 9.

Dimitri & Co. alleges twelve causes of action: Count I - Violation of the Lanham Act for Trademark Infringement pursuant to 15 U.S.C. § 1114; Count II - Violation of Florida Statute 495.131; Count III - Common Law Trademark Infringement; Count IV - Trademark Dilution under the Lanham Act pursuant to 15 U.S.C. § 1125; Count V - Violation of Florida Statute 495.151; Count VI - Common Law Trademark Dilution; Count VII - Unfair Competition Under Lanham Act pursuant to 15 U.S.C. §§ 1114 and 1125; Count VIII - Unfair Competition in Violation of Florida Statutes 495.131 and 495.151; Count IX - Common Law Unfair Competition; Count X - Patent Infringement in Violation of 35 U.S.C. § 271; Count XI - Copyright Infringement in violation of 17 U.S.C. § 501; and Count XII - Violation of Florida's Unfair and Deceptive Trade Practices Act. Claims X and XI, for patent and copyright infringement, are brought against Defendants Invicta, TM Brands, and Mr. Lalo. The remaining claims are brought against all Defendants.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must also contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III.    DISCUSSION

### A.    <u>Counts I - IX: The Trademark and Unfair Competition Claims</u>

Dimitri & Co. alleges that it is the exclusive licensee of the Technomarine Marks by virtue of the License Agreement and that, under the terms of the License Agreement, Dimitri & Co. had the right to exclude Technomarine from using the Technomarine Marks for development of eyewear products in the areas in Latin America and the United States. Am. Compl. ¶¶ 87-88. Dimitri & Co. states that Technomarine was required to request permission from Dimitri & Co. to distribute eyewear products bearing the Technomarine Marks in the United States. *Id.* ¶ 89. Dimitri & Co. alleges that the Defendants concealed the Swiss bankruptcy proceedings, concealed the purchase and sale of the Technomarine Marks, and concealed the details of the Asset Purchase Agreement ("APA") between Technomarine and Technomarine USA. *See id. generally*.

Defendants argue that the Court should dismiss the trademark claims because: (1) the ownership of the Technomarine Marks is necessarily governed by the APA and the court should not disturb the judgment of the Swiss bankruptcy court on the basis of comity; (2) Plaintiffs lack standing to bring trademark infringement claims because neither named plaintiff owns the

trademarks; and (3) pursuant to the Licensing Agreement, Dimitri & Co. never had the right to sue.

1. Comity

Defendants argue that the trademark claims should be dismissed because the trademarks were sold pursuant to the APA, which was approved by the Swiss bankruptcy court and the trustee executed the APA.  Defendants argue that this Court should give comity to the Swiss bankruptcy proceeding in which the APA was negotiated and approved.  Dimitri & Co. argues that comity is inappropriate because: (1) this case and the Swiss bankruptcy case are parallel proceedings; (2) the claims began to accrue during but were never litigated in the Swiss reorganization proceedings; and (3) there is no evidence that Dimitri & Co. was given adequate notice and an opportunity to participate in the Swiss reorganization proceedings.

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."  *Daewoo Motors Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1257-8 (11th Cir. 2006) (internal citations omitted).  To determine whether the application of comity is appropriate, the Court evaluates three factors:  "(1) whether the foreign court was competent and used 'proceedings consistent with civilized jurisprudence,' (2) whether the judgment was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just."  *Ungaro-Benages v. Dresdner Bank A.G.*, 379 F.3d 1227, 1238 (11th Cir. 2004).  Courts also consider whether "the central issue in dispute is a matter of foreign law and whether there is a prospect of conflicting judgments."  *Id.* In the context of bankruptcy, "the extension of comity 'enables the assets of a debtor to be

dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.'" *Daewoo*, 459 F.3d at 1258 (quoting *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003) (internal quotation omitted)).

Defendants rely heavily upon the Court of Appeals' opinion in *Daewoo*. There, Daewoo Motor Co. had license and distribution agreements with plaintiff Daewoo Motor America, Inc. ("Daewoo America"), the Korean automobile manufacturer's exclusive United States distributor. 459 F.3d at 1250. Daewoo America alleged that its rights were violated after a Korean bankruptcy court approved the sale of assets and liabilities of Daewoo Motor Co. (Daewoo America's Korean parent company), and defendants subsequently sold automobiles in the United States. *Id.* at 1251. The district court granted comity to the Korean bankruptcy proceeding for three reasons. *Id.* at 1255. First, the district court found that "Korea has a significant interest in regulating business activity on its shores." *Id.* (internal citation omitted). "Second, the district court found that any differences between Korean and U.S. bankruptcy law are minimal and do not offend U.S. notions of due process." *Id.* Third, the district court also found that Daewoo America "had notice, as well as a full and fair opportunity to participate in all facets of the Korean bankruptcy process." *Id.* (internal citations omitted). On appeal, Daewoo America argued that the district court was incorrect for several reasons. First, Daewoo America argued that it did not have an opportunity to be heard on the claims at issue before the district court and that it did not receive adequate notice of the reorganization plan. *Id.* at 1258. Second, Daewoo argued that the application of comity violates public policy. *Id.* Third, Daewoo America argued that prejudice to its United States creditors outweighs any arguments in favor of extending comity. *Id.* Fourth and finally, Daewoo America argued that comity should be denied because

the Korean court would not grant comity to a decision of the United States. The Court of Appeals did not find any merit to Daewoo America's arguments and accordingly held that the district court did not abuse its discretion by granting comity to the order of the Korean court. Circuit Judge Tjoflat specially concurred in the judgment but undertook an analysis of each of Daewoo America's fourteen claims because Judge Tjoflat did not agree that international comity entirely disposed of Daewoo America's amended complaint. *Id.* at 1261, 1267-1271. Judge Tjoflat distinguished between the claims that necessarily called into question the Korean bankruptcy court's orders, of which there were four, from those that did not. Judge Tjoflat stated that "[i]n each of these four claims, Daewoo America points to the asset transfer itself as the illicit conduct" and that "Daewoo America cannot attack the [asset transfer agreement] without also attacking the bankruptcy court's approval of it; the two are inextricably intertwined." *Id.* at 1271. Dimitri & Co.'s trademark claims are similarly intertwined with the Swiss bankruptcy court's final judgment.

Here, Dimitri & Co. argues that the Court should not extend comity for three reasons.[2] First, Dimitri & Co. argues that comity should not apply because the Swiss reorganization proceedings and the present lawsuit are parallel proceedings. Second, Dimitri & Co. argues that comity should not apply to new claims that were acquired during the reorganization proceedings which were not litigated. Third, Dimitri & Co. argues that Defendants have not proffered evidence that Dimitri & Co. received adequate notice of, and an opportunity to participate in, the Swiss bankruptcy proceedings.

---

[2] Notably, Dimitri & Co. does not contest the application of international comity on the basis of any of the factors set forth by the Court of Appeals for the Eleventh Circuit in *Ungaro-Benages v. Dresdner Bank A.G.*, 379 F.3d at 1238. Specifically, Dimitri & Co. does not argue that the Swiss bankruptcy court was incompetent or used proceedings inconsistent with civilized jurisprudence, that the judgment was rendered by fraud, or that the Swiss court's judgment was prejudicial because it violated American public policy notions of what is decent and just.

Dimitri & Co.'s argument that the timing of the two proceedings warrants against the application of comity is without merit.  Dimitri & Co. states that the APA was executed on March 31, 2015, three weeks after the filing of this lawsuit, and that the final judgment of the bankruptcy court was entered on July 23, 2015, four months after this lawsuit was filed.  In support of the argument that comity is precluded here because the proceedings are parallel, Dimitri & Co. mistakenly relies upon *Belize Telecom Ltd., Comm's Co, LLC v. Gov't of Belize*, 2005 WL 5643879, *26 (S.D. Fla. Aug. 17, 2005).  There, the court merely said "when parallel litigation is ongoing in a domestic and foreign jurisdiction, the domestic court is *not required* to defer in favor of the foreign proceeding and both may proceed to final judgment." *Id.* (emphasis added).  In fact, the Court of Appeals has drawn a distinction between retrospective and prospective application of comity.  *See GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1030 (11th Cir.  2014) ("Most frequently, international comity is applied retrospectively, when courts consider whether to respect the judgment of a foreign tribunal *or to defer to parallel foreign proceedings* . . . Far more rarely, courts have applied international comity prospectively, without a conflicting past or present foreign proceeding.") (emphasis added).  Here, Defendants seek the retrospective application of comity and Dimitri & Co. fails to cite any case law in support of its argument that the existence of a parallel proceeding precludes the application of comity.

Second, Dimitri & Co. argues that comity does not apply to new claims that accrued during the reorganization proceeding but not litigated therein.  The Court of Appeals dismissed the same argument in *Daewoo*.  In *Daewoo*, plaintiff similarly argued that "because its claims did not exist at the time of the Korean bankruptcy filing, they did not 'arise out of the same nucleus of operative fact, [and were not] based on the same factual predicate, as the Plan

Approval Order." 459 F.3d at 1259 (internal citations omitted). The Court found the argument unavailing and concluded that the claims were based on the reorganization plan and asset transfer agreement—which "was necessarily put at issue in the Korean proceedings and necessarily approved by the Korean court." *Id.* The Court thus rejects Dimitri & Co.'s argument[3] that its trademark claims should not be dismissed on comity grounds because they did not arise until after the Swiss reorganization proceedings began.

Third, Dimitri & Co. argues that it did not receive sufficient notice and opportunity to participate in the Swiss bankruptcy proceedings. To date, Dimitri & Co. has not represented precisely when it learned of the Swiss bankruptcy proceedings. In Dimitri & Co.'s Opposition to Technomarine USA's Motion to Dismiss, Dimitri & Co. argues that Technomarine USA and Invicta's refusal to provide a copy of the APA prior to the November 4, 2015 Preliminary Injunction Hearing supports the conclusion that Dimitri & Co. did not previously receive sufficient notice of the Swiss reorganization proceedings. Pls.' Opp. to Mtn. to Dismiss at 12 (ECF No. 128). Defendants, on the other hand, allege that Plaintiffs were aware of the bankruptcy by at least February or March 2015, but likely earlier. *See* Defs.' Mot. to Dismiss at 6 (ECF 119). Despite the ambiguity as to the precise date Dimitri & Co. learned of the bankruptcy proceedings, the record is clear that Dimitri & Co. was aware of the proceedings by April of 2015, if not earlier. On April 23, 2015, Defendants filed a motion to dismiss the complaint and stated therein "Plaintiff could have easily participated in the bankruptcy

---

[3] Dimitri & Co. cites one case in support of this argument, *Computer Assoc's Intern., Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997). There, the Court of Appeals for the Second Circuit concluded that there were two reasons why *res judicata* did "not prevent Computer Associates from maintaining its action based on French copyright claims in France: (i) the infringing conduct which formed the basis of the French action occurred after the filing of the United States action; and (ii) the New York federal district court lacked personal jurisdiction over [one of the defendants]." *Id.* at 371. This case is inapposite and wholly unhelpful to the Court's analysis of the applicability of comity to the case at bar.

proceedings (and still can)."  (ECF No. 18 at 7.)   The Swiss bankruptcy court entered final judgment on July 14, 2015.  *See* Judgment of the Court of First Instance, July 14, 2015 (ECF No. 120, Ex. 2).  In any event, Plaintiffs had at a minimum from April 23, 2015, until the Swiss bankruptcy court's entry of final judgment on July 14, 2015, to participate in those proceedings but chose not to do so.

The Court finds that Dimitri & Co.'s trademark claims must fail for "granting the relief sought would require the court to set aside the asset transfer to the defendants" which was approved by the Swiss bankruptcy court.  *Daewoo*, 459 F.3d at 1271.  It also bears mentioning that Dimitri & Co.'s trademark claims could have been, and perhaps should have been, adjudicated in Swiss arbitration pursuant to the mandatory arbitration provision in the License Agreement.

### 2.  Ownership of the Technomarine Marks

Even though the Court finds the application of international comity appropriate, dismissal of Dimitri & Co.'s trademark claims on the merits is also appropriate.  The Lanham Act identifies several forms of conduct that constitute actionable trademark infringement. *See* 15 U.S.C. §§ 1114(1)(a) & 1125(a).  A requirement to maintaining a trademark claim is that the plaintiff has an interest in the trademark the plaintiff is seeking to protect.  *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1412 (11th Cir. 1998) ("any Lanham Act plaintiff must have rights in the name at issue to seek protection").

The crux of Dimitri & Co.'s argument with respect to ownership of the Technomarine Marks is that, "at the time that Technomarine sold its rights in the Technomarine Marks to Invicta, it did so subject to Dimitri & Co.'s exclusive license in those marks." Pls.' Opp. to Mtn. to Dismiss at 13 (ECF No. 128).  However, Dimitri & Co. also acknowledges that it was no

longer an exclusive licensee as of May 2015. *See id.* (Dimitri & Co. "served as the exclusive

licensee of the Technomarine Marks from 2004 ***to May 2015***")  (emphasis added).

Dimitri & Co.'s claims necessarily implicate the terms of the License Agreement.

Portions of the relevant sections are excerpted below.

> Section 1 – License on the Trademark
>
> 2.1      . . . Licensor [Technomarine] hereby grants to Licensee [Dimitri & Co.] an exclusive license, limited to the territory reserved herein in Section 3.1, for the manufacturing and commercialization of the Products bearing the Trademark, within the limits of this Agreement.
>
> 2.2      **Licensee is not entitled to grant any sub-licenses**, unless he has received prior and written approval from Licensor.
> . . .
> Section 3 – Licensed Territory and Channels of Distribution
>
> 3.5   The offering for sale of the Products on the Internet is subject to Licensor's written approval, based on the prior submission by Licensee of the content and design of its website.
> . . .
> Section 5 – Conception and Design of the Products
> 5.1   Licensee is the author of all concepts, designs, slogans, pattern colors, tag lines of the Product collection dedicated to this License for its territories.
> . . .
> Section 17 – Early Termination
> 17.2   Either party may terminate this Agreement with immediate effect, without prior default notice, in case the other party would become insolvent or subject to any winding up, bankruptcy or any other proceedings for settlement of debts.
>
> Section 18 – Rights and obligations upon termination and at the end of the Agreement
> 18.2   Immediately upon expiration of this Agreement, whatever the cause and grounds of termination may be, all rights hereunder granted to Licensee hereunder shall cease and revert to Licensor.
>
> 18.2(b)   Immediately upon expiration of this Agreement, whatever the cause and grounds of termination may be, all rights for concepts, designs, slogans, pattern colors, tag lines of the Product collection developed by Licensee for the entire products of this license shall remain the property of Licensee's [Dimitri & Co.'s].

Section 21 – Assignment
This Agreement and the license rights granted hereunder are personal to Licensee and shall not be assigned to any third party without Licensor's prior written consent, which consent may be withhold [sic] in Licensor's sole and entire discretion.

Section 22 – Applicable Law
This Agreement shall be exclusively governed by Swiss substantive law, without regard to its conflict of laws principles.

Section 23 – Arbitral jurisdiction
Any dispute, controversy or claim arising out of, or in direct or indirect relation to, this Agreement shall be exclusively and finally settled by arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers of Commerce . . .

Licensing Agreement (ECF No. 116, Ex. 1) (emphasis in original).

Dimitri & Co. argues that it remains the exclusive licensee of the Technomarine Marks "because at the time that Technomarine sold its rights in the Technomarine Marks to Invicta, it did so subject to Dimitri & Co.'s exclusive license in those marks." Pls.' Opp. at 13 (ECF No. 128). Dimitri & Co. cites the Court of Appeals decision in *Gray v. Novell*, 412 Fed. App'x 199, 204 (11th Cir. 2011) in support of its argument that Dimitri & Co. remains the exclusive licensee of the Technomarine Marks. There, ownership of the UNIX trademark was at the center of the dispute. Plaintiff alleged defendants conspired to conceal the lawful owner of the mark and that the mark was not owned by defendant X/Open, therefore X/Open's opposition to plaintiff's registration of a similar mark was fraudulent. *Id.* The Court of Appeals found that, when the asset purchase agreement was executed, defendant Novell could not transfer the mark that it had exclusively licensed. *Id.* at 204. Further, "the APA was reached in full contemplation of the Licensing Agreement." *Id.* In *Gray v. Novell*, the licensing agreement "granted X/Open an 'exclusive, perpetual, irrevocable licensee to use, and sublicense to third parties the use of' the UNIX trademark." *Id.* at 201. The asset purchase agreement transferred "all rights and

13

ownership of UNIX and UNIXWARE, including—without limitation—the trademarks UNIX and UNIXWARE as and to the extent held by Novell." *Id.* (internal quotations omitted). "In other words, [the provision relating to asset transfers] confirmed that the UNIX and UNIXWARE trademarks were to be transferred to SCP—*but*, as indicated in Schedule 1.1(a), only 'as and to the extent held by' Novell." *Id.* The Court of Appeals affirmed the district court's grant of summary judgment in favor of defendants, concluding that there were no genuine issues of material fact regarding ownership of the mark. *Id.* at 206.

Here, unlike in *Gray v. Novell*, the Licensing Agreement did not grant Dimitri & Co. an "exclusive, perpetual, irrevocable license." The Licensing Agreement gave Dimitri & Co. an "exclusive license" but it did not have the right to sub-license without permission from Technomarine or the right to sue infringers. (ECF No. 116, Ex. 1, §§ 1.1, 1.2.) Significantly, the agreement was not perpetual—the Licensing Agreement contains provisions stated an end date, as well as provisions pertaining to early termination. *Id.* § 4.1, 17.2.

The APA sets forth the terms under which defendants purchased the Technomarine Marks from Technomarine. *See* APA (ECF No. 18-1.) Section 2.1 of the APA identifies the assets transferred and Section 2.3 states "[f]or the avoidance of doubt, neither of the Buyers assumes any other liability to any party other than the Distributors Amounts and neither of the Buyers assumes the underlying contracts with the distributors concerned." *Id.* Section 2.4 states, in part, "[f]or the avoidance of doubt, Buyers do not take over or assume any liabilities other than the Distributors, nor any agreements nor any employment relationships." The trustee appointed by the Swiss bankruptcy court approved and signed the APA. *Id.*

Here, the License Agreement was terminated and the APA explicitly stated that the buyers did not assume underlying contracts when purchasing the trademarks. Dimitri & Co.'s

argument that it remains the exclusive licensee not only calls into question the judgment of the Swiss bankruptcy court, but is inconsistent with the terms of the License Agreement.  Upon termination of the License Agreement, Dimitri & Co.'s rights in the Technomarine Marks reverted back to the Licensor—Technomarine.  Technomarine sold its rights to the Technomarine Marks to the Defendants.  Thus, neither Dimitri & Co. nor Technomarine presently owns the Technomarine Marks and thus Plaintiffs' Lanham Act claims fail.

Plaintiffs' state law trademark claims must fail as well.  *See Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1359 (S.D. Fla. 2012)  ("[p]laintiff is unable to state claims for trademark infringement, unfair competition and false designation of origin, and trademark dilution under federal law, 'it follows that none of [plaintiff's] state-law claims states a claim on which relief can be granted, either.'").

For the foregoing reasons, Plaintiffs' trademark claims are dismissed.

**B.  Count X: The Patent Claim**

In Count X, Dimitri & Co. alleges that Invicta, TM Brands, and Mr. Lalo infringed four of Dimitri & Co.'s patented inventions in violation of 35 U.S.C. § 271.  However, in Dimitri & Co.'s Opposition to Invicta, TM Brands, and Mr. Lalo's Motion to Dismiss (ECF No. 127), Dimitri & Co. only responds to claims regarding patent D611521.[4]  The Court reviews Plaintiffs' patent claim only as to patent D611521.  Defendants argue that Dimitri & Co. has failed to allege

---

[4]  Dimitri & Co. does not argue that it is the owner of the three other patents identified in the Amended Complaint (D630673, D630675, and 8167426).  Thus, the Court only considers Dimitri & Co.'s patent infringement claim as to patent D611521.  *See Melendez v. Town of Bay Harbor Islands*, 2014 WL 6682535, *7 (S.D. Fla. Nov. 25, 2014) ("when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (internal quotations and citations omitted).

that any infringement occurred within the United States, that the claim does not meet Federal pleading standards, and that neither of the named plaintiffs owns patent D611521.

Section 271(a) of the United States Patent Act states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. 271(a). To state a claim for patent infringement, a plaintiff must "plead facts sufficient to place defendant on notice." *Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004).

Dimitri & Co. argues that "the question of whether Invicta offers for sale or sells its infringing products in the United States is a question of fact that cannot properly be decided on summary judgment, let alone a motion to dismiss." ECF No. 127 at 4. The Amended Complaint alleges, in relevant part: (1) that Defendants Invicta, TM Brands, and Mr. Lalo have been marketing infringing eyewear products in "all of the markets where Dimitri & Co. currently sells its products;" (2) that they have created a website where they currently "promote, market and advertise Technomarine products" that are substantially similar to those Dimitri & Co. sells; (3) that they have undertaken "efforts to market and sell their unapproved and unauthorized eyewear products in the same markets that Dimitri & Co. currently sells its products;" (4) that Invicta currently offers for sale eyewear products that, upon information and belief, use Dimitri & Co.'s patented technology; and (5) that Invicta, through TM Brands, has entered into several marketing and distribution agreements for the marketing and sale of eyewear products "in the same markets where Dimitri & Co. currently sells its eyewear products." Am. Compl. ¶¶ 74, 76, 79-81.

Dimitri & Co. argues that it has sufficiently alleged a claim for patent infringement by alleging that Invicta has undertaken to promote, advertise, and offer to sell its infringing products

in the United States.  Dimitri & Co. cites *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 235 (D. Del. 2003), in support of the proposition that it need not allege that Invicta has actually sold any products in the United States in order to state a viable claim for patent infringement.  In *Wesley Jessen Corp.*, the court concluded that "an unauthorized offer to sell a patented product, which offer is made in the United States, is a violation of 35 U.S.C. ¶ 271(a)." *Id.* at 235.  However, this Court is not bound by the opinion of the Delaware court's opinion in *Wesley Jessen Corp.*

The Court finds the analysis in *Hubbell Inc. v. DMF Inc.* helpful.  No. 6:11-794-MGL, 2013 WL 152641 (D. S.C. Jan. 15, 2013).  In *Hubbell,* the court stated that "[t]he substantive question of whether an offer to sell has been made is a question of patent law."  *Id.* at *2 (citing *3D Sys. Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998)).  "[C]onsistent with the traditional contract law definition of the term 'offer to sell,' activities in preparation to sell, such promotional materials and advertisements, do not communicate language of commitment, and thus, by themselves cannot be offers to sell."  *Hubbell*, 2013 WL 152641, *2.

Here, Dimitri & Co.'s allegations, liberally construed, do not state a claim for patent infringement.  At most, Dimitri & Co. alleges that Invicta, TM Brands, and Mr. Lalo, have used internet marketing tools and made preparations to sell products in the same markets where Dimitri & Co. currently does business.

Further, Dimitri & Co.'s argument that it need not join Mr. Lampru as a co-plaintiff is unavailing.  Dimitri & Co. states that it is the assignee of patent 611521 and therefore Mr. Lampru need not be named as a co-plaintiff in this case in order to maintain a patent infringement claim.  Dimitri & Co. cites *Dynatech Corp. v. Frigitronics, Inc.*, 318 F. Supp. 851, 853-4 (D. Conn. 1970), in support of its argument.  There, the court examined the agreement

between the inventor and the assignee to determine the rights of the assignee because "[w]hat purports to be an assignment may be a license only, and the court will examine the 'license' or 'assignment' to determine the legal effect of the transfer agreement." *Id.* at 853-4. Dimitri & Co. has failed to allege sufficient facts regarding the nature of the assignment or discuss the terms of the agreement between Dimitri & Co. and Mr. Lampru. Additionally, Dimitri & Co. blatantly misstated the court's holding in *Dynatech*. The court found "that [inventor's] license to the plaintiff did not constitute an assignment of the patent and the plaintiff does not have the right to sue in its name without joining [inventor] as a co-plaintiff." *Id.* at 854. The court dismissed the action for failure to join the inventor, an indispensable party.

For the foregoing reasons, Dimitri & Co.'s patent infringement claim is dismissed without prejudice.

**C.  Count XI: The Copyright Claim**

Defendants argue that the copyright claim should be dismissed because:  (1) plaintiffs fail to allege registration of the protected materials; (2) plaintiffs fail to identify the "specific, original work that is the subject of the copyright claim; and (3) plaintiffs fail to identify Defendants' material which allegedly infringes on the copyright.

In order to state a valid claim for copyright infringement, a plaintiff must allege:  "(1) the specific original work that is the subject of the copyright claim; (2) that the plaintiff owns the copyright in the work; (3) that the work in question has been registered in compliance with the statute; and (4) by what acts and during what time the defendant has infringed the copyright." *Magical Mile, Inc. v. Benowitz,* 510 F. Supp. 2d 1085, 1087 (S.D. Fla. 2007) (quoting *Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1479 (S.D. Fla. 1990)).

Plaintiffs argue that the failure to allege that the subject material was federally registered does not warrant dismissal with prejudice.  Plaintiffs also argue that Dimitri & Co. need not establish the registration requirement because the copyrighted materials constitute foreign work that is exempt from the registration requirement under Section 411(a).  However, Dimitri & Co. does not allege in the Amended Complaint that the copyright at issue is a foreign copyright.  The Court finds that Plaintiffs have not sufficiently stated a claim for copyright infringement.  For the foregoing reasons, Dimitri & Co.'s claim for copyright infringement is dismissed without prejudice.

### D.  <u>Count XII: The FDUTPA Claim</u>

Defendants argue that, although it is unclear whether a FDUTPA claim is appropriate in the trademark context, the FDUTPA claim fails because the infringement claims fail.  Plaintiffs agree that the survival of the FDUTPA claim is tied to the survival of the trademark infringement claims.  *See* Pls.' Opp. at 18 (ECF No. 128).

To state a claim for violation of the FDUTPA, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.,* 581 F. Supp. 2d 1215, 1220 (S.D.Fla.2008).  A successful infringement claim supports a claim for violation of FDUTPA.  *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1283 (S.D. Fla. 2012) (citing *Natural Answers, Inc. v. SmithKline Beecham Corp.,* 529 F.3d 1325, 1333 (11th Cir.2008) ("... [plaintiffs] claim for a violation of the Florida Deceptive and Unfair Trade Practices Act rises or falls on the success of its trademark infringement and false advertising claims")); *see also TracFone Wireless, Inc. v. GSM Group, Inc.,* 555 F.Supp.2d 1331 (S.D.Fla.2008) (noting that trademark infringement is an unfair and deceptive trade practice that constitutes a violation of FDUTPA).  Here, because the Court finds that Plaintiffs

have failed to allege infringement claims, Plaintiffs' claim that Defendants violated the FDUTPA also fails.

For the foregoing reasons, Dimitri & Co.'s claim for violation of the FDUTPA is dismissed without prejudice.

### IV.     CONCLUSION

For the foregoing reasons, it is ordered and adjudged as follows:

Defendants' Motion to Dismiss the Amended Complaint (ECF No. 119) is GRANTED. The trademark claims (Counts I-IX) are dismissed with prejudice.  The patent, copyright, and FDUTPA claims (Counts X-XII) are dismissed without prejudice.

Defendants' Motion to Dismiss the Amended Complaint (ECF No. 120) is GRANTED. The trademark claims (Counts I-IX) are dismissed with prejudice.  The patent, copyright, and FDUTPA claims (Counts X-XII) are dismissed without prejudice.

All pending motions, if any, are denied as moot.  Plaintiffs have 30 days from the date of this order to file an amended complaint curing the deficiencies described above.

Done and ordered in Chambers at Miami, Florida, this  25th  day of August, 2016.

 

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:      Counsel of record